Final case for the day is People v. Monroe, counsel for the appellant, you may proceed. Good afternoon, Your Honors. May it please the Court, Mr. Daley. My name is Ian Barnes on behalf of Mr. Monroe from the Office of the State Appellate Defender. Mr. Monroe appeals the improper dismissal of his first-stage post-conviction petition because he raised – he stated the gist of two separate constitutional claims in his first-stage petition. The first was that the circuit court had considered an improper aggravating factor, and the second that he received ineffective assistance of counsel at sentencing. I'd like to address both those in turn. With respect to the first claim, specifically Mr. Monroe alleged that the circuit court considered improperly some of the injuries that were sustained by Amanda R., namely the 18 inches of bowel that she had removed, and the permanent risk of bowel obstruction that she now has. As Your Honors are aware, the right to liberty and freedom from restraint are fundamental constitutional rights that are enshrined in both the Illinois Constitution and the United States Constitution. And our appellate court has held that when a circuit court considers an improper aggravating factor, it unjustly affects that liberty interest. And that's where Mr. Monroe's claim stems from. At sentencing, Dr. DeMaio testified at length about Amanda R.'s injuries, including this section of bowel that was removed during surgery and her risk of obstruction. But she never testified as to the cause of that injury. There was no medical opinion as to what caused that injury. And nevertheless, at sentencing, the state explicitly argued that bowel injury as aggravating factor, as they stated, aggravating factor number one. And that's at page 117 in the record. And the circuit court, in its finding, the second and third sentences it said were, I can agree with all the factors and aggravation and mitigation that were pointed out by both sides. They are all appropriate. So the circuit court accepted the state's argument that these injuries were an aggravating factor. They were serious harm that Mr. Monroe had caused. And the problem with that is that, as the appellate court in Wartolski said, the circuit court was engaging in the classic logical fallacy of post hoc ergo proctor hoc. After it, therefore because of it. The circuit court was assuming causation when there wasn't any. And that's what Maldonado and Gant, which are both in Mr. Monroe's brief, stand for. That the circuit court cannot consider harm suffered by the victim if there is no causal evidence to relate it to the defendant's conduct. And at bottom, what we're talking about is, has Mr. Monroe stated the gist of a claim? Is there a claim here that's arguable on its merits? And the constitutional dimension. And as our Supreme Court has said over and over again, the question is, is it frivolous and without merit? Is it an indisputably meritless legal theory? Or are the factual allegations fanciful or delusional? And in this case, the answer to both is no. This is a legal theory. It's well recognized. It's his liberty interest. And the allegation that the circuit court considered this factor, considered this evidence when there wasn't the causality ever presented, isn't fanciful or delusional. So I would suggest on that basis alone, this court should reverse and remand for second stage proceedings and the appointment of counsel. But in addition to that, Mr. Monroe also alleged ineffectiveness in that his counsel retained a registered nurse, Linda Furcano, to generate a report. And that that report was never used at sentencing. Specifically, that report contained a statement by Ms. Furcano that said that when you have a duodenal injury, an intestinal injury, symptoms like vomiting typically manifest between 24 and 48 hours after the injury. And that's relevant because by Mr. Monroe's own admission, his conduct took place the morning of February 28, 2010, and Amanda R.'s vomiting began only several hours later. So based on her report, it suggests the injury that caused the bowel injury occurred well before Mr. Monroe's conduct. And at the first stage, Mr. Monroe doesn't have to establish the full breadth of Strickland. He only has to establish, as our Supreme Court in Tate said, that counsel was arguably unreasonable and that this arguably prejudiced him. And with respect to that, it was unreasonable because this evidence, either the report or Ms. Furcano's testimony, would have undermined this finding that Circuit Court said, yes, I agree with this aggravating factor. It's appropriate. And Mr. Monroe was prejudiced because he received a sentence of 11 years, which encompassed all of the aggravating factors that the Circuit Court found, including this serious harm aggravating factor. So it would be illogical to say his sentence would have been the same without this serious harm aggravating factor. That's to say it would be meaningless, and respectfully, that doesn't make sense. So just like his first claim, Mr. Monroe has established an arguable constitutional violation. That's all he has to do at this stage. He set out a legal claim that's arguable on its merits. That's all the Supreme Court requires of pro se defendants at the first stage. So unless Your Honors don't have any questions, I would simply ask this Court reverse and the appointment of counsel because he has met his burden at the first stage. If you counsel, we will have an opportunity for the State. Good afternoon, Your Honors. May it please the Court, Counsel. My name is Patrick Daly, and I'm here on behalf of the State. So this case comes to this Court, obviously, as part of a guilty plea. And I'm going to quote from the defendant's brief on page 13. The crux of the argument, at least the first part of the argument, that the Circuit Court heard no evidence that Mr. Monroe's single punch caused the victim's lacerated liver and bowel injuries. Now in the argument today, the lacerated liver aspect of that argument has sort of kind of drifted off a little bit, so I'll kind of bring back that aspect of the argument. First of all, though, it might be helpful to look at the historical basis of this guilty plea. When the parties appeared before the Court, the defendant was charged with aggravated battery and alleged great bodily harm. During the course of the guilty plea, there was a point of contestation about what was the great bodily harm. And there was, obviously, there's some evidence, and that was presented in the factual basis that related not only to the victim that suffered and a couple of other physical attributes that were indicative of some kind of injury being inflicted. Defendant's counsel contested this aspect of it to the extent of the necrotic bowel. And so the Court, I think, trying to figure out, okay, where are we at in this case, and what are we exactly pleading guilty to here, pinned the parties down, mutually agreed between the parties that the great bodily harm that was sustained was the lacerated liver. And didn't Judge Beresevic ask that question directly? Correct. He made a very specific point. What is the great bodily harm here? Why? Because he's a good judge and he understands that he doesn't want there to be any question later on exactly what it is that the defendant is pleading guilty to here. He doesn't want to accept a guilty plea from a defendant who is going to be saying, I didn't commit this So it's an important aspect of this going forward when we get to the later stages when we get to the sentencing. What was the sentencing range? I'm not certain, Judge. I mean, he got 11 years. I think it's a Class X because of the age of the victim. So Judge Welch is nodding, so maybe I'm right. But it was at the lower end, probably mid-lower end of the range of sentences the defendant could receive, if I'm correct in there. But definitely not at the middle, so I can see that. So when the defendant obviously when he pleads guilty, and that guilty plea is an admission to the underlying facts of the crime here being causation between the great bodily harm of the lacerated liver and the defendant striking the victim. Now, when we get to sentencing, the court hears, there was testimony presented by a pediatric emergency room physician, the Cardinal Glennon, where she detailed all the injuries that are suffered by the victim, including the necrotic bowel for which there was surgery and the lacerated liver and all the other things. And this is the state essentially presenting its facts, if you will, at the sentencing stage. So the court can have, as well, a range of facts that are relevant to the case, but it's not a trial. The state's not required to prove a causation at this point of the lacerated liver, which is what the defendant was pleading guilty to, which the court went to great pains to ensure. That didn't require surgery, is that right? I'm sorry? That didn't require surgery. I don't believe that did require surgery. I think it was just the necrotic bowel. That's my understanding, that the surgery was related to the bowel that had to be removed. I think that the lacerated liver was determined through MRI, CAT scan or something like that, but I don't think that it was treated in a surgical procedure, but that's my understanding. Okay, so the surgery I believe that the doctor related to went to the removal of the bowel. I think 18 inches or so, a fairly lengthy amount of bowel in a two-and-a-half-year-old child that had to be removed because of this necrotic loss of blood loss. So the court had gone to great pains to ensure that this is what we're pleading guilty to, so that removes any obligation at any point, really, even to draw this connection. Now, if the court had relied upon the necrotic bowel as part of its sentence, I can understand the defendant's argument here, but when we go and look at the judge's comments at the conclusion of the sentencing, and I have a lengthy sort of block quote from the judge's verbalization here on page 16 of the brief, you'll note that the court at several points mentioned that a child wandering around a house that falls down doesn't get injured enough to cause a liver laceration this big. The court then proceeds in making mention of the fact that, I did hear testimony that you hit this child in some fashion in her stomach severe enough to cause a terrible liver laceration. So the court, entirely consistent with its earlier attempts to pin the parties down exactly what this defendant did and what he was pleading guilty to and what's the great bodily harm, sentenced the defendant precisely on those terms, on the great bodily harm that the parties had agreed to, which is the lacerated liver. So whatever extent this necrotic bowel has is really nothing in this case, which is why here at the first stage this court can affirm the lower court's decision because the record affirmatively rebuts the defendant's allegation that the court had considered something improper at the time of sentencing. The court had, from the outset to the end, had considered only, and considered this plea only relating to the lacerated liver. And having been pled guilty to that, the state didn't have to present any testimony at sentencing in order to allow the court to impose a sentence in that regard. Now with regards to the nurse's report, the argument is really sort of the same. If you look at this report, first of all, these are my notes and maybe I'm wrong, but I believe that in her report she indicated that the onset of the blow to injuries was 12 to 48 hours, not 24 to 48 hours, which is sort of pertinent to part of my argument. But in any event, she had prepared a report, I believe at the request of or on behalf of or on behest of defense counsel. Clearly I think that the purpose of it was to establish some kind of framework for whether there's going to be a causation defense here. If you look at this report in the rough sheet, the nurse indicates that she looked at reference materials that address vomiting and abdominal pain and indicated that the abdominal pain began on the 28th at 11 a.m., which puts the actual time of the injury anywhere between 12 to 48 hours before that time. That's the quote from the record. She did not make any mention, apart from the fact that the CT scan had confirmed a lacerated liver, any kind of mention or indication in that regard. So the report addresses the relationship with the injury and the necrotic intestine, but that's not, again, that's not what this defendant really pled guilty to. It's not what the court ultimately sentenced the defendant upon. And so the fact that the defense counsel didn't present this report in sentencing, and the defendant's argument on appeal is that the defense counsel should have presented this by way of mitigation, doesn't really make much sense because number one, the report was really kind of intended to determine whether there was any causation or not. So it wasn't a mitigation report. It was an exoneration report, which didn't satisfy apparently defense counsel's estimation with regards to the lacerated liver, which is probably why there was such a big fight at the beginning of the guilty plea, what it is he's pleading guilty to. But second of all, even if you kind of expand out the timeframe in which the 12 to 48 hours that the nurse refers to, you'll note that at the beginning of the case when they're having this sort of back and forth about what the defendant was pleading guilty to, the defense counsel was also adamant that the defendant had not allowed all this time to go by with the young victim vomiting and having abdominal pain. It was his contention that this onset of these symptoms, which prompted them to go to the emergency room, occurred the following day. Now, we know that the child had been left with the defendant in the early morning hours or the morning hours. The mother had returned home at about 3 p.m. And so there was the defendant's statements in the interrogation in which he indicated that it all happened the same day. The defense counsel was making it pretty clear from his strategic standpoint, from his factual standpoint, that's not really what happened. It was actually the next day. So that sort of precedes sort of a thought process on the defense counsel's part that this is the timeframe for this. If that's true, then these injuries, if it does take a 12-hour lag time or more for the onset of these abdominal injuries to manifest, that falls precisely within that timeframe that defense counsel himself was insisting was the correct timeframe in this case. So it certainly can't be ineffective for counsel to see a report which basically rebuts any notion that he might have that this time lag was going to be of any benefit to him. If anything, it worked against him. For Condo, it would only confirm counsel's estimation of when these injuries started to manifest and when they took the child to the emergency room. Does the Court have any further questions? We ask the Court to affirm the judgment. Thank you. The first point I'd like to address is what Mr. Daley started with, which is what are we talking about, the liver laceration or the bowel injury? As we acknowledged in the reply brief, Mr. Daley is absolutely correct. The liver laceration is encompassed by the great bodily harm element of the offense. They stipulated to it during the plea, but the abdominal injury is separate. The state still specifically argued that during sentencing. They said aggravating factor number one, they listed off all of Amanda R.'s injuries, and that included a discussion of this removed bowel. And this Court should reject Mr. Daley's interpretation that the circuit court didn't rely on this, because it says, I agree that all these factors are appropriate, and yes, later on the circuit court says, I'm not going to consider evidence of what I didn't hear, like these bruises and the hair falling out, but it never disavows the fact that it says it agrees with this aggravating factor, these specific bowel injuries. And I realize it's a canon of construction, but I think it's a useful metaphor, and I'm probably going to butcher it, but there is a canon called expressio unius exclusio alterius. You're really going a lot of Latin there. I'm trying, Your Honor. Good job. Thank you. Mine is too old. I didn't know either one of them. When the circuit court says, I'm not going to consider bruises and hair falling out, it's listing this class of things that it's not going to consider, and we can assume that when it doesn't list the bowel injury in that class of things, that it was considering those, because it said, I accept your argument, that's appropriate, I agree with it, and it never later on says, I'm not going to consider that. So respectfully, I mean, that is the issue here. Did the circuit court consider this? And at best, what we're talking about is the record is unclear. From the state's perspective, at best, it's unclear. The circuit court says, I agree with this, it's appropriate. And from Mr. Daley's perspective, the statement of, I'm not going to consider the bruises and the hair falling out, somehow disavows that reliance on this aggravating factor. At best, this is unclear. And certainly not affirmatively rebutting Mr. Monroe's claim. And that's the stage we're at. Is the record affirmatively rebutting this claim? The answer is no. And that means he gets to go on to the second stage. Just in terms of Mr. Monroe's sentence, 11 years is still almost double the minimum, and that's considering he has almost no background. I believe he has one burglary from 2003. Well, if the range is 6 to 30, that's pretty close to the low end, isn't it? I would disagree with that. It's still 11 years. That's almost double the minimum. And just in terms of general sentencing concepts, I think it's well established that when the legislature establishes a minimum for an offense, they say that's an acceptable amount of punishment for this offense. So he's still got almost double that, which is still a good amount of time. I also wanted to clarify the report that was generated by Ms. Furcano. Her report says the onset of pain and tenderness could be expected 12 to 24 hours after. Vomiting is 24 to 48. So even with Mr. Daley's interpretation that, well, defense counsel said the symptoms didn't start until the next day, which as far as I'm concerned, how defense counsel represents, I should say misunderstands the evidence really doesn't matter. Mr. Monroe's confession that was taped, he says, she started vomiting the morning that I hit her, February 28, 2010. The same morning he hits her, that's when the vomiting starts. So consistent with her report, we're still looking at 24 to 48 hours earlier for the injury that is causing this vomiting. Now, Mr. Daley seems to suggest that a lot of this was trial strategy.  At least that's his perspective. But as our Supreme Court explained in Tate, we don't care about trial strategy at the first stage. It's not relevant. We don't examine it. It might be relevant at the second and third stage, but all we're interested at the first stage is, was this arguably ineffective? And trial strategy gets determined later on. And finally, I would just urge your honors to look at the bare bones claim that Mr. Monroe makes with respect to the aggravating factor. There is a point in his petition, and I think it's 167 and 168 in the common law record. There's a parenthesis, and it basically says, the circuit court made a conclusion, and it didn't have evidence for it. And the thing that it didn't have evidence for was the statutory aggravating factor. And we lawyers might call that relying on an improper aggravating factor. And Mr. Monroe shouldn't be punished because he didn't know how to articulate that in a way that we all can. So if you don't have any further questions, I would just ask this court to reverse and remand and appoint counsel at second stage proceedings. Thank you, counsel. The court will take the matter under advisement and issue a decision in due course. The court will stand in recess. All rise.